UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

CENTRAL DIVISION AT LEXINGTON

Civil Action No. __________________

BOBBY THORPE, JR. PLAINTIFF

v.

JOHN HOLLAND, in his individual capacity;

Serve: John Holland, individually
c/o Breathitt County Sheriff's Office
1137 Main Street
Jackson, KY 41339

and

BREATHITT COUNTY, KENTUCKY DEFENDANTS

Serve: Breathitt County, Kentucky
c/o Hargis Epperson, County Judge/Executive
1137 Main Street
Jackson, KY 41339

## COMPLAINT AND JURY DEMAND

Plaintiff Bobby Thorpe, Jr., by counsel, brings this action against Defendant John Holland in his individual capacity and Defendant Breathitt County, Kentucky, and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendant's interference with Plaintiff's recording of law-enforcement conduct and Defendant's approximately one-minute restraint of Plaintiff, including physical obstruction and unwanted arm contact, at the Jackson Lions Club on November 16, 2025.

2. Plaintiff seeks damages under 42 U.S.C. § 1983 for violations of the First and Fourth Amendments, as applied to the States through the Fourteenth Amendment. He asserts recording-related retaliation, unreasonable seizure and excessive force, a separate retaliation claim arising from Holland's effort to procure his removal from Lions Club membership, and county liability as specified below. Plaintiff also asserts Kentucky-law claims for battery, false imprisonment, and defamation against Holland individually only.

## JURISDICTION AND VENUE

3. This Court has federal-question and civil-rights jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action seeks redress for deprivations of federal constitutional rights under 42 U.S.C. § 1983. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Kentucky-law claims because they arise from the same encounters, communications, and alleged retaliatory course of conduct as the federal claims and form part of the same case or controversy.
4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred at the Jackson Lions Club in Breathitt County, Kentucky, within this District.

## PARTIES

5. Plaintiff Bobby Thorpe, Jr. is an individual and was president of the Jackson Lions Club at the time of the events alleged. His mailing address is P.O. Box 1015, Jackson, Kentucky 41339.
6. At all relevant times, Defendant John Holland was the Breathitt County Sheriff. He is sued in his individual capacity for his own conduct described below.

7. Defendant acted under color of Kentucky law by invoking his authority as sheriff, purporting to act pursuant to an order, issuing commands, threatening arrest, and exercising physical control over Plaintiff. His challenged conduct involved the use or misuse of authority made possible by his public office.

8. Defendant Breathitt County, Kentucky, is a local governmental entity. Plaintiff seeks to hold the County responsible for its own policy decisions through its final law-enforcement policymaker, not solely because of an employment relationship with Holland.

9. At the time of the events alleged, Holland was the elected sheriff and, on information and belief, possessed final county policymaking authority over the sheriff's office's law-enforcement response to the property-access dispute, its handling of recording, detention, and force, and its communications with third parties concerning suspected criminal misconduct arising from that dispute. Plaintiff alleges that Holland personally selected and implemented the challenged courses of action in exercising that authority, including his communication with Lions Clubs International's Legal Division.

## FACTUAL ALLEGATIONS

10. On November 16, 2025, Plaintiff was present at the Jackson Lions Club while community members were gathered for family photographs.

11. Defendant arrived at the club during a dispute concerning neighboring tenants' access to club property and the placement of chains restricting access.

12. Plaintiff and his son, Jonathan, recorded portions of Defendant's conduct using their phones. Plaintiff recorded from a place where he was entitled to be and did not physically interfere with a lawful police operation by recording.

13. Defendant ordered Jonathan to turn his phone off. That command is alleged as context for Defendant's ensuing interference with Plaintiff's own recording; Plaintiff does not seek recovery for an injury belonging solely to Jonathan.

14. Defendant approached Plaintiff at close range and stated, in substance, that he had been ordered to come to the club.

15. No order required Defendant to intervene in the manner described in this Complaint, restrain Plaintiff, take Plaintiff's phone, or prevent Plaintiff from recording.

16. Plaintiff questioned Defendant's asserted authority and attempted to put distance between himself and Defendant.

17. Defendant closed the distance and positioned himself so as to box Plaintiff in along the narrow walkway adjoining the building and railing. Defendant blocked Plaintiff's attempted departure, and Plaintiff remained confined by Defendant's positioning and asserted authority.

18. Plaintiff held his phone near his chest. Defendant reached toward Plaintiff's hands and attempted to take Plaintiff's phone while Plaintiff was recording.

19. Plaintiff pulled his phone away to prevent Defendant from taking it.

20. Defendant then grabbed Plaintiff by the arm. Jonathan contemporaneously objected and told Defendant to keep his hands off his father.

21. Defendant's arm contact was intentional and unwanted. In conjunction with his blocking of Plaintiff's attempted departure, it objectively manifested an intent to control and restrain Plaintiff's movement.

22. The restraint, including Defendant's blocking of Plaintiff's departure before physical contact, lasted approximately one minute. During the physical obstruction, Plaintiff submitted by

remaining in the confined area; Defendant thereafter also restrained him through physical contact.

23. Plaintiff did not strike Defendant or threaten physical violence against him. Plaintiff's withdrawal of his phone and reaction to Defendant's unwanted contact were efforts to protect his phone and disengage from the encounter.

24. Defendant threatened arrest during the encounter, including warning that replacing the chains would result in jail. Plaintiff does not allege that every statement concerning the chains was itself retaliation for recording. The recording-related claim rests on Defendant's attempt to take Plaintiff's recording device and the ensuing contact and restraint in the sequence described above.

25. Defendant issued no citation and brought no charge against Plaintiff as a result of the encounter.

26. Defendant had no reasonable suspicion or probable cause arising from Plaintiff's recording, questioning of authority, or withdrawal of his phone that justified the restraint alleged. Plaintiff posed no immediate threat requiring Defendant to grab or forcibly control him.

27. Defendant's attempt to take the phone was directed at stopping or interfering with Plaintiff's recording. Defendant's preceding command to Jonathan, his approach to Plaintiff, and his reach for Plaintiff's phone support the inference that Plaintiff's recording and objections substantially motivated Defendant's actions against Plaintiff.

28. Plaintiff pulled away in reaction to Defendant's unwanted contact and sustained or aggravated injury to his right shoulder and upper arm in doing so. Plaintiff alleges that Defendant's conduct and Plaintiff's responsive withdrawal caused or aggravated his injury; he does not allege that Defendant directly caused every medical condition reflected in his records.

29. On November 18, 2025, Plaintiff reported to Kentucky River Medical Center that John Holland had assaulted him on Sunday and reported arm pain beginning two to three days earlier. Subsequent records document right shoulder and upper-arm symptoms, restricted movement, and shoulder tendon abnormalities.

30. Plaintiff experienced physical pain and limitation following the encounter. The extent to which the encounter caused or aggravated the documented shoulder conditions, and the amount of resulting treatment expense and other loss, will be established through medical and other evidence.

31. On or before November 24, 2025, after the November 16 encounter, Holland telephoned Brian Poshka of Lions Clubs International's Legal Division concerning Plaintiff, whom he identified as the Jackson Lions Club president.

32. In a November 24, 2025 email sent at 11:55 a.m. to District Governor April Ferguson, Poshka reported that he had just spoken with the sheriff. Poshka reported Holland's statements that Plaintiff was stirring up problems with neighbors, might be stealing money, and was ruining the Lions name.

33. Poshka expressly reported that Holland wanted Lions Clubs International to remove Plaintiff as a member. Poshka also reported that he told Holland to proceed with charges if Plaintiff was committing crimes, but that Holland was reluctant to do so. Poshka stated that he had been given no real evidence of a policy violation.

34. The accusations that Plaintiff was stealing money or harassing neighbors were false. On information and belief, Holland knew the accusations were false or advanced them with reckless disregard for their truth as a pretext to obtain Plaintiff's removal.

35. Plaintiff alleges that Holland used his position as sheriff and the apparent credibility of criminal-misconduct accusations conveyed by the county's chief law-enforcement officer to enlist club leadership in punishing Plaintiff. Holland's communication was presented as a sheriff's report of suspected misconduct, not merely a private disagreement with Plaintiff's opinions. On information and belief, Holland made the final decision for the sheriff's office to communicate those accusations to Lions Clubs International and seek Plaintiff's removal, exercising his asserted authority over the office's response to the dispute and its official communications concerning alleged criminal conduct. This decision continued the challenged response through a separate retaliatory act.

36. Ferguson informed Plaintiff of Holland's accusations. Plaintiff responded in a November 25, 2025 letter denying embezzlement and harassment, explaining the club's financial oversight and the board's decision to exclude neighboring tenants, and describing the November 16 encounter.

37. Holland personally witnessed Plaintiff's recording and objections during the November 16 encounter. Plaintiff alleges that Holland's ensuing false accusations and removal request were substantially motivated by that protected conduct and would not have occurred absent his retaliatory purpose. The short interval, Holland's personal involvement in the confrontation, and his request for removal without supporting evidence support that inference.

38. Plaintiff's family operated a local newspaper that had reported on missing sheriff's-office money identified through an audit. Plaintiff identified that reporting in his response as additional context for Holland's hostility. Plaintiff does not allege, merely from that family relationship, that he personally authored the coverage.

39. Plaintiff does not allege that Lions Clubs International actually removed him or that Holland expressly threatened enforcement action against the club. The challenged conduct is Holland's allegedly knowing use of false criminal accusations and his affirmative request to club leadership to expel Plaintiff as punishment for protected activity.

40. The removal effort threatened Plaintiff's longstanding civic affiliation and leadership standing and caused embarrassment, humiliation, and reputational injury. Plaintiff had been a Lions Club member since 1988 and club president since 2021. His wife and son were also members.

**COUNT I — FIRST AMENDMENT RETALIATION AND INTERFERENCE WITH RECORDING**
**42 U.S.C. § 1983 — AGAINST HOLLAND INDIVIDUALLY**

41. Plaintiff incorporates the preceding allegations as though fully stated herein.

42. Plaintiff engaged in protected expression by recording Defendant's exercise of law-enforcement authority and questioning and criticizing Defendant's asserted authority and conduct, without physically obstructing a lawful police function.

43. Defendant knew Plaintiff was recording and objecting to his conduct. Defendant intentionally attempted to stop or interfere with that recording by reaching for Plaintiff's phone and subjected Plaintiff to unwanted physical contact and restraint in connection with that attempt.

44. Defendant's attempted taking of the recording device, physical contact, and restraint would deter a person of ordinary firmness from continuing to record or criticize law-enforcement conduct. Plaintiff's efforts to retain his phone or continue objecting do not negate the coercive nature of those acts.

45. Plaintiff's protected conduct was a substantial or motivating factor in Defendant's actions, and Defendant would not have taken the same actions against Plaintiff in the absence of that protected conduct.

46. Defendant's conduct was not a reasonable, content-neutral restriction necessary for safety or the performance of a lawful police function. It burdened Plaintiff's own recording and expression under color of law and violated his First Amendment rights.

47. As a direct and proximate result, Plaintiff suffered the injuries and losses alleged and is entitled to compensatory damages or, if actual damages are not proved, nominal damages.

## COUNT II — FOURTH AMENDMENT UNREASONABLE SEIZURE AND EXCESSIVE FORCE
## 42 U.S.C. § 1983 — AGAINST HOLLAND INDIVIDUALLY

48. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

49. Defendant seized Plaintiff by intentionally blocking his attempted departure through asserted police authority and physical positioning, to which Plaintiff submitted, and by intentionally grabbing his arm to control his movement. The seizure lasted approximately one minute, including the period of restraint before physical contact.

50. The detention was unsupported by reasonable suspicion of criminal activity or probable cause, and no warrant, court order, or other lawful basis authorized the seizure alleged.

51. Independently of the absence of a lawful basis for detention, Defendant used objectively unreasonable force by grabbing and controlling Plaintiff in response to his withdrawal of his phone and effort to disengage, when Plaintiff presented no immediate physical threat and was not fleeing a lawful detention or violently resisting arrest.

52. Under the totality of the circumstances, the nature of the encounter, lack of a threatening offense by Plaintiff, absence of an immediate safety threat, and Plaintiff's effort to disengage did not justify the restraint and physical force Defendant employed.

53. Defendant's actions violated Plaintiff's right to be free from unreasonable seizure and excessive force under the Fourth Amendment.

54. Defendant's unwanted contact foreseeably caused Plaintiff to pull away, producing or aggravating injury. Defendant's conduct directly and proximately caused Plaintiff's compensable injuries and losses. If actual damages are not proved, Plaintiff seeks nominal damages for the constitutional violation.

**COUNT III — FIRST AMENDMENT RETALIATION THROUGH THE LIONS CLUB REMOVAL EFFORT**
**42 U.S.C. § 1983 — AGAINST HOLLAND INDIVIDUALLY AND BREATHITT COUNTY THROUGH COUNT IV**

55. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

56. Plaintiff engaged in protected activity by recording Holland's conduct and questioning and objecting to his asserted authority during the November 16 encounter. Holland knew of that activity because he personally participated in the encounter.

57. Acting under color of law as alleged above, Holland subsequently contacted Lions Clubs International's Legal Division, advanced false accusations of suspected theft and misconduct, and affirmatively sought Plaintiff's removal as a member.

58. Holland's targeted effort to procure expulsion through false criminal accusations would deter a person of ordinary firmness from recording, criticizing, or objecting to law-enforcement conduct. It was more than mere disagreement, a good-faith report, or an ordinary response to criticism.

59. Plaintiff's protected activity was a substantial or motivating factor in that removal effort, and Holland would not have undertaken it absent Plaintiff's protected activity. Holland intended to punish Plaintiff for that activity and discourage further recording and criticism.

60. As a direct and proximate result of this separate act of retaliation, Plaintiff suffered the resulting humiliation, reputational injury, and other losses to be proved. Plaintiff seeks compensatory

damages for proven injury or nominal damages if actual damages are not proved, without duplicate recovery.

**COUNT IV — MUNICIPAL LIABILITY FOR FINAL POLICYMAKER DECISIONS**
**42 U.S.C. § 1983 — AGAINST BREATHITT COUNTY, KENTUCKY**

61. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

62. For the November 16 law-enforcement response and the subsequent communication to Lions Clubs International concerning Plaintiff's alleged misconduct, Holland exercised final county policymaking authority as alleged above. He personally chose and implemented the challenged phone interference, restraint, and force, and separately chose to convey false accusations to Lions Clubs International's Legal Division and request Plaintiff's removal from membership.

63. Each challenged course of action was Holland's deliberate selection among alternatives in directing and conducting the sheriff's office's response and communicating alleged criminal misconduct to third parties. Plaintiff alleges that Holland acted as the final county policymaker in those specific areas, rather than merely exercising ordinary operational discretion. Those decisions constituted county policy for the challenged actions. Liability is based on those decisions themselves, not on respondeat superior or subsequent ratification.

64. The decisions concerning the November 16 encounter were the moving force behind the constitutional violations in Counts I and II. Holland's separate decision to communicate false accusations and seek Plaintiff's removal through Lions Clubs International was the moving force behind the First Amendment retaliation in Count III. Each decision directly and proximately caused the injuries attributable to that violation.

65. This count extends county liability to the constitutional violations alleged in Counts I, II, and III. It rests on Holland's own decisions in exercising final policymaking authority for each

challenged course of action. Plaintiff does not rely on an unsupported pattern of prior violations, after-the-fact failure to discipline, or a generalized failure to train.

66. Plaintiff seeks compensatory damages for proven injuries attributable to that county policy, nominal damages where appropriate, and recoverable attorney's fees and costs, without duplicate recovery.

**COUNT V — BATTERY**
**KENTUCKY LAW — AGAINST HOLLAND INDIVIDUALLY**

67. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

68. Holland intentionally grabbed Plaintiff's arm without Plaintiff's consent. The contact was unwanted and offensive and was not privileged or reasonably necessary to accomplish a lawful law-enforcement purpose.

69. Plaintiff did not strike or threaten Holland. Holland's intentional unwanted contact foreseeably caused Plaintiff to pull away, producing or aggravating the shoulder and arm injuries alleged above. Plaintiff seeks damages only for injuries and aggravation causally attributable to this conduct, together with resulting pain, loss of function, humiliation, and emotional distress.

70. Holland acted willfully and without lawful justification and, on information and belief, in bad faith to punish Plaintiff's recording and objections rather than to perform a legitimate police function. Plaintiff seeks compensatory and, where warranted by the proof, punitive damages against Holland individually, and nominal damages where appropriate.

**COUNT VI — FALSE IMPRISONMENT**
**KENTUCKY LAW — AGAINST HOLLAND INDIVIDUALLY**

71. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

72. Holland intentionally confined Plaintiff against his will by blocking his attempted departure along the narrow walkway, asserting police authority and threatening arrest in the course of the encounter, and then grabbing his arm. Plaintiff was aware of the restraint and did not consent to it.

73. The confinement lasted approximately one minute, including the blocking of Plaintiff's departure before physical contact. It was wrongful and unsupported by reasonable justification, lawful authority, or privilege. Plaintiff's recording, objections, and withdrawal from unwanted contact supplied no lawful basis for confinement.

74. As a direct and proximate result, Plaintiff suffered loss of liberty, humiliation, emotional distress, and the resulting physical injury or aggravation proved to have arisen from the restraint and his reaction to unwanted contact. Holland acted willfully and, on information and belief, in bad faith for the retaliatory reasons alleged above. Plaintiff seeks compensatory and, upon the required proof, punitive damages against Holland individually, and nominal damages where appropriate.

**COUNT VII — DEFAMATION (SLANDER)**
**KENTUCKY LAW — AGAINST HOLLAND INDIVIDUALLY**

75. Plaintiff incorporates the preceding factual allegations as though fully stated herein.

76. On or before November 24, 2025, Holland orally published to Brian Poshka of Lions Clubs International's Legal Division statements concerning Plaintiff, identified as the Jackson Lions Club president, including that he "may even be stealing money," together with accusations that he was stirring up problems with neighbors and ruining the Lions name. Holland requested Plaintiff's removal from membership.

77. The theft accusation was false. In the context of Holland's presentation as sheriff and his demand for removal, it conveyed an assertion or insinuation of actual criminal misconduct by Plaintiff, rather than merely nonactionable criticism or an expression of personal dislike. Poshka understood the statements to concern Plaintiff and communicated them to District Governor April Ferguson in the November 24, 2025 email described above.

78. The accusation of stealing money, considered in its full context, imputed criminal dishonesty and is alleged to constitute slander per se. Alternatively, Plaintiff seeks recovery for the reputational injury and other legally recoverable harm caused by the publication and established by the evidence.

79. On information and belief, Holland knew the accusation was false or published it with reckless disregard for its truth. Plaintiff alleges that the publication was a pretext to obtain his expulsion in retaliation for the protected recording and objections Holland had personally witnessed days earlier. Holland sought removal while declining to pursue criminal charges and furnishing Poshka no real evidence of a policy violation. These circumstances, together with the knowing falsity or reckless disregard alleged above, support Plaintiff's allegation of an improper retaliatory purpose and abuse of any qualified privilege claimed for the communication.

80. As a direct and proximate result, Plaintiff suffered injury to his reputation and civic standing, embarrassment, humiliation, and emotional distress. Plaintiff does not premise this claim on an actual expulsion from Lions Club membership. Plaintiff seeks compensatory damages, presumed damages to the extent legally available, and punitive damages upon the requisite proof against Holland individually only, without duplicate recovery.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests judgment against Holland individually and Breathitt County on the claims asserted against each, as follows:

A. Compensatory damages in an amount determined by the jury for injuries and losses proximately caused by the constitutional violations and, against Holland individually only, the Kentucky-law torts, without duplicate recovery;

B. Nominal damages where available under the federal and Kentucky-law claims if liability is established but actual damages are not proved;

C. Punitive damages against Holland individually only, upon proof of the culpability required by the applicable federal or Kentucky law, including malicious intent or reckless or callous indifference to federally protected rights for the federal claims and willful, malicious, or otherwise qualifying aggravated misconduct for the Kentucky-law claims;

D. Reasonable attorney's fees and recoverable costs under 42 U.S.C. § 1988 and other applicable law;

E. Prejudgment and postjudgment interest as permitted by law; and

F. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

/s/ Rex Kilburn
Rex Kilburn
Kentucky Bar No. 100195
KILBURN LAW, PLLC
482 Main Street
Hazard, Kentucky 41702
Telephone: 606-551-1079
Email: rex@kilburnlawpllc.com
Counsel for Plaintiff